HEANEY, Senior Circuit Judge.
In this case, Nebraska farmers, the Tra-nels, filed for Chapter 11 bankruptcy. Over their objections, the bankruptcy court confirmed their creditors’ reorganization plan. The district court affirmed this decision. The Tranels appeal. We affirm.
BACKGROUND
Doris and Lavern Tranel and their son, Kenneth, and his wife, Beverly, are western Nebraska farmers. In 1984, Lavern and Kenneth jointly founded a trucking business. Both families were indebted to Adams Bank & Trust (Bank), while Doris and Lavern Tranel were also indebted to the Prudential Insurance Company of America (Prudential). These debts arose from both their trucking and farming operations. According to the Bank and Prudential, as of August 8, 1986, Beverly and Kenneth Tranel owed the bank approximately $547,000, excluding interest, and Doris and Lavern Tranel owed the Bank approximately $678,000, excluding interest, while also owing Prudential $246,000.
On July 1, 1986, the Bank commenced an action in Nebraska state court to foreclose on the Tranels’ trucks and trailers. The *1170 Tranels responded by filing Chapter 11 petitions for reorganization in early August, 1986,[1] and Lavern and Doris Tranel filed their disclosure statement on November 24, 1986. Beverly and Kenneth Tranel submitted their reorganization plan on January 22, 1987; the Bank and Prudential filed a joint reorganization plan and a creditors’ disclosure statement on October 7, 1987; Doris and Lavern Tranel did not submit a reorganization plan until July 21, 1988.
The Tranels objected to the disclosure statement filed by the Bank and Prudential. The bankruptcy court ordered amendments to that statement, and Prudential and the Bank filed an amended disclosure statement. The Tranels objected to the now amended disclosure statement. At this point, the bankruptcy court ordered an evidentiary hearing to help it decide whether to confirm the creditors’ plan.
Prior to the evidentiary hearing, the Tra-nels moved the court to allow them to employ separate counsel to bring an action for fraud in state court.[2] Inferring that the action would be against it, the Bank objected to the Tranels’ motion. The court denied the Tranels’ motion because the Tra-nels waited over two years to bring the action to the attention of the court and had not prominently listed the action in any of their disclosure statements during that time. The district court affirmed. The Tranels appeal this decision, arguing that they should be able to bring the action in state court, or alternatively at least pursue their claims in federal court.
After the district court’s affirmance of its motion denial, the bankruptcy court held the evidentiary hearing concerning the confirmation of the creditors’ plan. After reviewing the case, the bankruptcy court confirmed the creditors’ Joint Plan of Reorganization (Joint Plan) and denied the confirmation of the Tranels’ plan. The district court also affirmed this decision, prompting the Tranels to appeal this confirmation to this court.
DISCUSSION
I. Confirmation of Creditors ’ Joint Plan
We first address whether the Tra-nels filed their reorganization plan within the 120-day exclusivity period provided by 11 U.S.C. § 1121(b) (1979).[3] This exclusivity period gives the debtor the “first shot” to negotiate a reorganization plan satisfactory to its creditors. The Tranels claim that they filed plans and disclosure statements within the 120-day period. The Bank and Prudential contest this claim and argue that the Tranels did not file a reorganization plan until after the 120-day exclusivity period. Our review of the record supports the creditors’ position. Neither the bankruptcy docket sheet nor the record submitted by the parties indicate that the Tranels filed a reorganization plan within the 120-day exclusivity period. Because none of the Tranels submitted a reorganization plan within the 120-day period, the creditors were entitled to file their Joint Plan under 11 U.S.C. § 1121(c)(3) (1991).[4] *1171 The bankruptcy court eventually confirmed this Joint Plan, rather than confirming either the plan submitted by Kenneth and Beverly before the Joint Plan was submitted or Lavern and Doris’ plan, which was submitted after the Joint Plan.
The issue before us is whether this confirmation was appropriate. In In the Matter of Button Hook Cattle Co., Inc., 747 F.2d 483 (8th Cir.1984) and its companion case, In the Matter of Cassidy Land and Cattle Co., Inc., 747 F.2d 487 (8th Cir.1984), this circuit held that a farmer who files a Chapter 11 petition but “fails to submit a reorganization plan within 120 days from filing, is thereafter vulnerable to a liquidation plan filed by a party in interest to the chapter 11 proceeding.” Button Hook, 747 F.2d at 484. Based on this ruling, Button Hook proceeded to approve the bankruptcy court’s confirmation of the creditor’s reorganization plan despite the objections of the debtor-farmer. Id. at 487. The Tranels argue that because their plan was submitted before the creditors,[5] Button Hook is irrelevant, and therefore their plan should be confirmed, despite the fact that they missed the 120-day exclusivity period. 11 U.S.C. § 1121(c)(2) (1979) and (3) (1991) clearly mandate, however:
(c) Any party in interest ... may file a plan if and only if—
(2) the debtor has not filed a plan before 120 days after the date of the order for relief under this chapter; or
(3) the debtor has not filed a plan that has been accepted, before 180 days after the date of the order for relief under this chapter, by each class of claims or interests that is impaired under the plan.
In this case, both of these alternative conditions were satisfied. Appropriately, the bankruptcy court considered confirming the Bank’s and Prudential’s Joint Plan, despite the objections of the Tranels. See In re Jorgensen, 66 B.R. 104, 107 (Bankr. 9th Cir.BAP 1986) (debtor submitted a plan after 120-day exclusivity period thereby creating the possibility that “a creditor’s liquidating plan may be confirmed over farmer-debtors’ objection.”).
The Tranels’ argument that Button Hook is inapplicable here fails, since Button Hook stands, in part, for the proposition that farmer-debtors can be forced into liquidation despite their objections under Chapter 11. While the bankruptcy court could consider confirming the creditors’ Joint (liquidation) Plan under Button Hook, it was still obligated to also consider confirming the debtors’ plan, particularly since at least one of the debtors (Beverly and Kenneth Tranel) submitted their reorganization plan before the Joint Plan of the creditors’ was filed. In the situation where both the creditors and debtors have filed plans, if the debtors’ plan was not considered for confirmation by the court, the court might unnecessarily assist the creditors in forcing farmers into liquidations, although the farmers might have developed and offered a reorganization plan which would satisfy the demands of the creditors but which did not require liquidation. See 11 U.S.C. §§ 303(a) (1979),[6] and 1112(c) (1979),[7] (evincing a preference that farmers not be forced into liquidation). Here, the bankruptcy court did consider the Tranels’ *1172 plan for confirmation.[8] However, the court found that they failed to present substantial evidence in support of their plan and that their plan severely underestimated the value of their assets and therefore could not be confirmed.
Our ruling that the bankruptcy court could consider confirming the Joint Plan over the objections and the alternative plan submitted (after the 120-day exclusivity period) by the Tranels does not end our inquiry. We next determine whether the Joint Plan met the confirmation requirements outlined in 11 U.S.C. § 1129 (1991). The Tranels raise several arguments regarding this issue.
A. Best Interest Test
First, citing 11 U.S.C. § 1129(a)(7) (1979), the Tranels claim that the bankruptcy court did not apply the “best interest of the creditors” test. This statute requires that the creditors receive “property of a value ... that is not less than the amount that they would so receive or retain if the debtor were liquidated under Chapter 7.... ” Id. The Tranels claim that the test was not satisfied, because the court did not consider three aspects of Chapter 7 analysis. First, the Tranels argue that the creditors did not present any liquidation analysis to the court, thus making it impossible to determine whether the reorganization plan was in their best interest. Second, the Tranels claim that without liquidation analysis, there can be no assurance that their tax liabilities will be fulfilled. Finally, the Tranels contend that the trustee’s compensation under the plan was too indefinite to allow the court to determine whether the plan met the best interest of the creditors.
The bankruptcy court found:
Each holder of a claim or interest has accepted the plan or will receive or retain under the plan property of a value, as of the plan’s effective date, that is not less than the amount that such holder would receive or retain if debtors were litigated under Chapter 7 of the Bankruptcy Code on such date.[9]
Our review of the record supports this finding, as the court had ample evidence, such as claims of the creditors, tax returns of the Tranels, and real estate and property appraisals, on which to base its conclusion. With regard to the Tranels’ specific claims that a liquidation analysis, including the tax consequences of liquidation, were necessary, we find that the Amended Disclosure Statements prepared by the Bank for both Kenneth Tranel and Lavern Tranel satisfy the complaints of the Tranels, since each of the Amended Disclosure Statements contained a liquidation analysis and an analysis of the resulting tax consequences. In addition to these considerations, the court also heard the testimony of the Tranels’ own expert witness, who, despite his affiliation, admitted that there would be little or no tax liability with respect to any disposition of the assets under the Chapter 11 plan.
With regard to trustee compensation, the Tranels argue that under the confirmed plan, there are no provisions for how the trustee is to be paid nor an estimate as to the amount of his compensation, other than the stipulation that the trustee will be paid an hourly wage. We disagree.
The Joint Plan provides in Paragraph 7.09: “the Trustee shall be compensated for services rendered as Trustee as provided in 11 U.S.C. § 326.” 11 U.S.C. § 326(a) (1979) outlines a precise fee schedule for a trustee.[10] Given this statutory provision *1173 and the Joint Plan’s reliance on it, the Tranels cannot persuasively claim that there is no provision for trustee payment in this case nor that the trustee is to be paid an hourly wage. We further find the Tra-nels’ allegation that the fee of the trustee is unpredictable and thus confounds the application of the best interest test to be meritless for two reasons. First, section 326(a) deals in precise figures, therefore the cost of trustee compensation is project-able. Second, the Joint Plan expressly requires the trustee to submit his compensation claims to the bankruptcy court for approval, at which time the Tranels can raise any objections, thus providing an opportunity to ensure that trustee compensation does not jeopardize compliance with the best interest test.
B. Trustee Disinterestedness
The Tranels next contend that the bankruptcy court did not consider other assets which could be recovered under a Chapter 7 proceeding. Specifically, the Tranels claim that the court should have examined and considered their requested leave to file a state court lawsuit against the Bank. According to the Tranels, a Chapter 7 trustee normally would investigate the validity of this claim, but in their case, the trustee is not disinterested and thus was not inspired to fulfill his duty and investigate their complaint. See, e.g., In re Microdisk, Inc., 33 B.R. 817, 818 (D.C.Nev. 1983) (“A bankruptcy trustee may not have an interest adverse to that of the trust he is administering; by requiring the trustee to forbear all opportunities to advance his own self-interest, the undivided loyalty of his administration dissuades any questioning as to his disinterestedness.” (citing Mosser v. Darrow, 341 U.S. 267, 271, 71 S.Ct. 680, 682, 95 L.Ed. 927 (1951) (“Equity tolerates in bankruptcy trustees no interest adverse to the trust.”))); see also King, 5 Collier on Bankruptcy 11 321.01 at 321-4-5 (15th ed. 1991) (trustee disinterestedness probably still a legal requirement).
To support their allegation of trustee bias, the Tranels attached to their appellate brief a letter written by the trustee to the Bank’s attorney in which the trustee requested the Bank to guarantee that he would be compensated for his services.[11] It does not appear that this letter was part of the record submitted to the bankruptcy court. If it had been, we believe that the best course of action would have been for the court to disqualify the appointed trustee and name a substitute. We will not interfere with the bankruptcy court’s discretion, however, since the bankruptcy court directed the trustee to investigate the Tranels’ claim against the Bank, and more importantly, provided recourse for the Tra-nels should the trustee fail to perform his duty.[12] As for the Tranels’ claim that because the trustee did not investigate their state court action and thus prevented the bankruptcy court from considering the Tra- *1174 neis’ “other assets” (i.e., their proposed state court suit against the Bank), their argument is contradicted by the bankruptcy court’s order denying their motion for reconsideration.[13]
C. Secured and Unsecured Creditors
The Tranels finally argue that the bankruptcy court erred in placing the secured and unsecured creditors in the same class in one section of the Joint Plan. Specifically, the Tranels object to language which reads, “The Allowed Secured Claim of the general unsecured creditors.... ” Read in isolation this language is troubling. After reviewing the entire Joint Plan, however, this language clearly results from a typographical error, which, in correct form, either should have deleted the word “Secured” or changed the word “Secured” to “Unsecured.”
Even in its current state, we do not find that the secured and unsecured creditors are placed in the same class.[14] Similarly, we do not believe that the parties were confused by the typographical error. The Tranels did not object to this language prior to the confirmation of the Joint Plan, nor did they object to it at trial, indicating that the Tranels understood from the outset that the secured and unsecured creditors were classified differently.
II. Denial of Leave to Bring State Court Action
The Tranels claim that the bankruptcy court erred in denying them the right to bring a state court action against third parties. To support their claim, the Tranels cite Bankruptcy Rule 6009 which states: “With or without court approval, the trustee or debtor in possession may prosecute or may enter an appearance and defend any pending action or proceeding by or against the debtor, or commence and prosecute any action or proceeding on behalf of the estate.” We find the Tranels’ reliance on Rule 6009 puzzling. If it is true that the Tranels could bring a state court action without the bankruptcy court’s approval, we do not understand why the Tranels sought the court’s approval in the first place or how the Tranels can argue that the bankruptcy court prevented them from exercising their right to do so.
The Tranels additionally argue that their proposed state court action was not a core proceeding and thus could not be brought before the bankruptcy court, and therefore should be litigated in state court. See 28 U.S.C. § 167(b)(1) (1991).[15] Section 157 delineates a host of actions which it deems core proceedings. Included in this list are “proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship....” 28 U.S.C. § 157(b)(2)(0) (1991). The contemplated state court action strikes at the heart of the debtor-creditor relationship, and as such, is a core proceeding over *1175 which the bankruptcy court retained jurisdiction. See Howell Hydrocarbons, Inc. v. Adams, 897 F.2d 183 (5th Cir.1990) (core proceeding must involve decision that ultimately affects distribution of debtor’s assets).
After denying the Tranels leave to sue in state court, the bankruptcy court ruled that the Tranels could not interrupt the bankruptcy proceeding by litigating their claims against the Bank and its officers in federal court. To support its ruling, the bankruptcy court relied on the fact that the Tranels did not prominently list their claims against the Bank on the disclosure statement filed by the Tranels in connection with their proposed Chapter 11 plan. In reaching this decision, the bankruptcy court commented that the Tranels’ attempt to bring a federal court action against the Bank was apparently motivated by a desire to delay the bankruptcy proceeding.
The Tranels argue that they properly disclosed their claims pursuant to 11 U.S.C. § 1125.[16] Their primary disclosure consisted of a reference to the Bank’s state court action against them, followed by the words “counterclaim pending;” this reference was made in Kenneth and Beverly Tranels’ “Statement of Affairs and Schedules.” In addition, in both families’ “Statements of All Liabilities of Debtor,” the Tranels disputed the Bank’s claimed security interests in their property, thus implying that they intended to file a suit against the Bank for its fraudulent loaning practices.
Implicit in section 1125 of the Bankruptcy Code is the recognition that “[i]n reorganization cases, there is frequently great uncertainty, [and tjherefore the need for flexibility is greatest.” H.R.Rep. No. 595, 95th Cong., 1st Sess., 408-409 (1977), U.S. Code Cong. & Admin.News 1978, pp. 5787, 6364, 6365. Nonetheless, the disclosure in question — in this case, the Tranels’ action against the Bank — must be sufficient to “enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan.” 11 U.S.C. § 1125(a)(1).
Based on this requirement, we agree with the bankruptcy court that the Tranels did not adequately disclose their proposed state court action to their creditors and could not rely on their cryptic references to a lawsuit to justify bringing their suit in federal court at the time they requested to do so. In reaching this decision, we note that the Tranels’ suit against the Bank can still be brought by the trustee. Indeed, although the bankruptcy court initially denied the Tranels’ motion to bring their action prior to confirmation of the creditors’ plan, it recognized that “the trustee is required to investigate and determine the existence of claims against proponents of the plan ... and to bring the appropriate actions against such creditor.” Moreover, the bankruptcy court expressly provided recourse for the Tranels should the trustee fail to perform this duty.[17]
CONCLUSION
We affirm the district court’s affirmance of the bankruptcy court.

. Specifically, Beverly and Kenneth Tranel filed for reorganization on August 9, 1986, while Doris and Lavern filed on August 8, 1986. Because this case involves two bankruptcy actions sharing similar facts and identical legal issues, the two cases have been consolidated.

. The Tranels claimed that the Bank maliciously and intentionally manipulated the value of the collateral held by the Bank as security for the Tranels’ loans so as to gain control of the Tra-nels’ farming and trucking operations. The Tra-nels further alleged that the Bank tried to gain control of their farming and trucking businesses by constantly interfering with the Tranels’ farming and trucking operations, spreading false information about the Tranels, refusing to cooperate in the use of certain cash collateral, retaliating against the daughter of Lavern and Doris Tranel for her testimony supporting her parents in the proposed state court action, unlawfully compounding interest on debts owed by the Tranels, fraudulently applying funds received from the Tranels to the wrong accounts, and fraudulently obtaining a deed of trust from Lavern and Doris Tranel for certain lands owned by the Tranels.

. Section 1121(b) provides:
(b) Except as otherwise provided in this section, only the debtor may file a plan until after 120 days after the date of the order for relief under this chapter.

. Section 1121(c)(3) provides as follows:
(c) Any party in interest, including the debt- or, the trustee, a creditors’ committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may file a plan if and only if—
*1171 (3) the debtor has not filed a plan that has been accepted, before 180 days after the date of the order for relief under this chapter, by each class of claims or interests that is impaired under the plan.

. As explained supra at 1170, Kenneth and Beverly filed their plan before the creditors filed their Joint Plan, while Lavern and Doris filed their plan after the Joint Plan.

. Section 303(a) provides that:
(a) An involuntary case may be commenced only under chapter 7 or 11 of this title, and only against a person, except a farmer or a corporation that is not a moneyed business, or commercial corporation, that may be a debtor under the chapter under which such case is commenced.

.Section 1112(c) provides:
(c) The court may not convert a case under this chapter to a case under chapter 7 of this title if the debtor is a farmer or a corporation that is not a moneyed, business, or commercial corporation, unless the debtor requests such conversion.

. Apparently, the bankruptcy court viewed the separate reorganization plans filed by the respective Tranel couples to be so similar that the two plans could be considered as one for confirmation purposes.

. We feel that the bankruptcy court’s conclusions here contradict the Tranels additional argument that the bankruptcy court did not compare the Chapter 11 assets recovery with what could be recovered under Chapter 7.

.Section 326(a) provides:
(a) In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee’s services, payable after the trustee renders such services, not to exceed fifteen percent on the first $1,000 or less, six percent on any amount in excess of $1,000 but not in excess of $3,000, three percent on any amount in excess of $3,000 but not in excess of $20,- *1173 000, two percent on any amount in excess of $20,000 but not in excess of $50,000, and one percent on any amount in excess of $50,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

. The pertinent part of this letter reads:
I would still be willing to serve as Trustee in both of the cases. In that connection, you will recall that I earlier mentioned that in addition to the provisions in the Plan for payment of fees and expenses to the Trustee, I would like to have some sort of a separate guaranty from the bank. Although you mentioned that you felt that would cause a problem, I am certain something can be worked out to provide for payment of my fees and expenses by way of advances from the bank on a monthly basis with reimbursement back to the bank from me upon receipt of fees and expenses after approval of applications by the court.
In any event, I would appreciate it if you would give the above further thought and discuss it with your bank and advise.

. The bankruptcy court ordered:
The liquidating trustee is authorized by the terms of the plan and the order to liquidate all assets of the debtors. This must mean that the trustee is required to investigate and determine the existence of claims against proponents of the plan. If the liquidating trustee fails to investigate and determine the validity of such claims or fails, to the satisfaction of the debtors, to bring the appropriate actions against such creditors, the debtors, as interested parties, can bring this matter before the Court.

.The bankruptcy court commented:
... Paragraph 3 additionally suggests that the Court summarily denied the debtors the right to litigate the Bank's secured claims in state court before a jury. As counsel well knows, this Court, after hearing argument concerning the appointment of an attorney to represent the debtors to commence state court litigation, denied the request. The debtors, pursuant to such request, alleged they had a state court cause of action against the Bank which existed prepetition. Several years after the bankruptcy case was filed, without listing such cause of action either on their original schedules or on their disclosure statement, the debtors requested the opportunity to go to state court to litigate it. If they have a cause of action, it can be litigated in the bankruptcy court or the federal district court after it is appropriately scheduled and disclosed....

. In the Joint Plan, Classes A-E exclusively involve "The Allowed Secured Claimfs]” of various creditors and the descriptions of these classes never invoke the word "unsecured.” In contrast, Class F refers to "unsecured creditors” and "unsecured portions of the claims previously classified in this Plan, claims classified as disputed, contingent and unliquidated,...."

. Section 157(b)(1) provides:
(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection () of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

. Section 1125(a)(1) provides:
(a) In this section—
(1) “adequate information” means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor’s books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan[.]

. See supra note 12 at 1173.